UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| RUSS LEE MASUNO, | Case No. 8:18-cv-00228-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Russ Lee Masuno ("Plaintiff") filed a Complaint on February 8, 2018, seeking review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on September 18, 2018. The matter now is ready for decision.

## I.
## BACKGROUND

Plaintiff filed his application for DIB on November 18, 2014, alleging disability commencing on February 21, 2014. Administrative Record ("AR")

139-42. On June 7, 2017, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). AR 33-69. On June 27, 2017, the ALJ issued a written decision finding Plaintiff was not disabled. AR 15-26. The ALJ found Plaintiff had not engaged in substantial gainful employment since February 21, 2014 and suffered from the following severe impairments: depressive disorder, not otherwise specified; anxiety disorder; and history of alcohol dependence in recent remission. AR 17. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform a full range of work, limited as follows: "[Plaintiff] is limited to simple repetitive tasks with frequent interactions with supervisors, occasional interactions with coworkers[,] and minimal public contact; he requires additional supervision once every 45 days for these simple repetitive tasks; and he is like[ly] to miss work one day every 45 to 60 days." AR 18-19.

      The ALJ determined Plaintiff was unable to perform his past relevant work as a software engineer. AR 24. Considering Plaintiff's RFC, age, education, work experience in conjunction with the Medical-Vocational Guidelines, and the VE's testimony, which included an opinion that Plaintiff could perform the requirements of "hundreds of thousands of unskilled representative occupations in the national economy," the ALJ concluded he was capable of performing work that exists in significant numbers in the national economy. AR 25. Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act, from the alleged onset date through the date of the decision. AR 25.

      Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This action followed.

# II.
# LEGAL STANDARDS

## A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where that error is harmless. Id. at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

//
//

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015).

If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as he "actually" performed it when he worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016).

If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or

regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, he or she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Id. at 1099.

The claimant generally bears the burden at each of steps one through four to show he or she is disabled, or he or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show he or she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 4):

Issue No. 1: Whether the RFC lacks substantial evidence because the ALJ improperly rejected the opinions of Plaintiff's treating psychiatrist and therapist; and

Issue No. 2: Whether the ALJ properly considered Plaintiff's subjective complaints.

**A. Medical Opinion Evidence**

1. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

//

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 1164 (citation omitted).

Plaintiff concedes Ms. Middleton, licensed marriage and family therapist ("LMFT"), "is not an acceptable medical source." Jt. Stip. at 7. Such "other sources" are not entitled to the same deference as a medically acceptable treating source. Molina, 674 F.3d at 1111. An ALJ may discount opinions of these "other sources" if the ALJ "gives reasons germane to each witness for doing so." Id. (internal quotation marks and citations omitted); Villafan v. Comm'r Soc. Sec., 2018 WL 2734914, at *14 (E.D. Cal. June 5, 2018) (LMFTs are not an acceptable medical source; they are considered an "other source" for which the ALJ must give reasons germane to the source in discounting their assessment).

    a. <u>Analysis: Doctor Litzinger</u>

Dr. Jeffrey D. Litzinger is one of Plaintiff's treating psychiatrists. He completed treatment notes following a March 2, 2016 office visit noting that Plaintiff's mood was depressed, and his affect was restless and fidgety. AR 373.

Dr. Litzinger also noted Plaintiff's thought process was logical, linear, and goal directed, but that he was distracted. Id. His thought content showed no suicidal or homicidal ideation, and he exhibited no evidence of psychosis. Id. Plaintiff's cognition decreased his short term memory and he showed poor concentration, but his insight and judgment were fair to good. Id. Dr. Litzinger diagnosed Plaintiff with major depressive disorder, anxiety disorder, and agoraphobia without panic disorder. Id. He also assessed Plaintiff with alcohol dependency, "likely" ADHD, and past polysubstance use. Id. In Dr. Litzinger's "Procedures Notes," he opined Plaintiff was moderately limited in: (1) completion of complex tasks; (2) sustained ability to complete simple tasks; and (3) interaction with others. AR 374. He also opined that Plaintiff was moderately to severely limited in his ability to maintain a schedule, and severely limited in his ability to take direction from supervisors. Id.

      The ALJ set forth a detailed summary of Dr. Litzinger's treatment notes, and then discounted the doctor's opinion about the more severe limitations because: (1) Plaintiff failed to comply with treatment recommendations; (2) mental status findings conflicted with restrictive limitations; and (3) Plaintiff acknowledged a more moderate condition. AR 25, 374.

      Plaintiff contends that the ALJ failed to articulate legally sufficient reasons for rejecting the opinion. Jt. Stip. at 5-8, 14-16.

      Preliminarily, the Court notes the ALJ did not reject Dr. Litzinger's opinion in its entirety. The ALJ partially credited the opinion, finding it by and large "not inconsistent with [Plaintiff's] longstanding history of treatment for depression and anxiety disorder." AR 22. Then, in fashioning the RFC, the ALJ took Plaintiff's mental limitations into account by restricting Plaintiff to simple and repetitive tasks, limiting his interaction with coworkers and the public, requiring additional supervision, and allotting for missed work every 45 to 60 days. AR 19. Moreover, in finding Plaintiff could perform jobs that exist

7

in significant numbers in the national economy, the ALJ took into account Plaintiff's ability to perform work at all exertional levels was "compromised by [his] nonexertional limitations," and limited Plaintiff to unskilled jobs. AR 25. To the extent the ALJ declined to accept the more severe limitations outlined by Dr. Litzinger, those reasons are supported by the record.

First, the ALJ noted Dr. Litzinger's treatment records indicated Plaintiff continued to drink alcohol while taking Effexor[1] despite medical instructions to the contrary. AR 22. For example, the doctor's notes indicated that: (1) he instructed Plaintiff to strive for abstinence (AR 374, 377, 383); (2) Plaintiff "went off his medications . . . because he started drinking again and thought he couldn't take [them] with [alcohol]"; (3) after restarting Effexor, Plaintiff stated he continued to "drink[] about 3 shots 'if he has to force himself to do something,'" and he uses alcohol "as an excuse" (AR 375, 378); (4) Plaintiff was prescribed Effexor but was not taking it when he reported drinking four to five shots of hard liquor in the morning (AR 382); (5) if he has to go out, Plaintiff reported having a couple of more shots (AR 382). Despite these notations, nothing in Dr. Litzinger's opinion addressed the impact of Plaintiff's alcohol use and failure to follow treatment advice on the doctor's findings, such as how long Plaintiff would remain functionally impaired or whether Plaintiff would remain functionally impaired if he stopped using alcohol. AR 22. The ALJ could properly consider this conflict and omission in the doctor's treatment notes. See Wilhelm v. Comm'r Soc. Sec. Admin., 597 F. App'x 425, 425 (9th Cir. 2015) (ALJ properly rejected doctor's opinion because it contradicted her own treatment notes); Shavin v. Comm'r Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject physician's opinion by

---

[1] "Effexor (Venlafaxine) is used to treat depression, anxiety disorder, and panic disorder." Ryan v. Comm'r Soc. Sec., 528 F.3d 1194, 1202 n.1 (9th Cir. 2008).

"noting legitimate inconsistencies and ambiguities in the doctor's analysis or conflicting lab test results, reports, or testimony" (internal citation omitted)); see also Parra, 481 F.3d at 748 (claimant bears the burden of proving that drug addiction and alcoholism are not contributing factors material to his or her disability, in that he or she would remain disabled if the drug and alcohol substance abuse ceased); 20 C.F.R. §§ 404.1530, 416.930 (claimants must "follow treatment prescribed by [their] medical source(s) if this treatment is expected to restore [their] ability to work").

Second, the ALJ noted that Dr. Litzinger's mental status examination showed no evidence of psychosis. AR 22, 373, 383. This was consistent with other evidence in the record. For example, in December 2016, after Plaintiff achieved sobriety, treating neurologist Dr. Omid Omidvar found Plaintiff to be normal on mental status examination. AR 22, 404-05. Other records also showed improvement in Plaintiff's condition with abstinence and compliance with treatment. AR 20, 325-28. The ALJ was permitted to reject an opinion that is unsupported by the record as a whole, and inconsistent with Dr. Litzinger's own findings. Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings."); Wilhelm, 597 F. App'x at 425); Shavin, 488 F. App'x at 224 (9th Cir. 2012).

Third, the ALJ noted Plaintiff acknowledged to Dr. Litzinger that his depression was generally moderate, and that he was not crying as much. AR 22, 372 (depression "6-7/10"), 375, 381 (depression improved with medication, "5/10"). This also conflicted with Dr. Litzinger's severe findings. See Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (an ALJ may properly reject limitations recommended by a physician that conflict or are inconsistent with the claimant's own statements); Hoopai v.

9

Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (explaining the Ninth Circuit has not "held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation."); Satrom v. Astrue, 2011 WL 2633876, at *4 (E.D. Wash. July 1, 2011) ("Because the ALJ found [examining psychologist]'s report inconsistent with the record as a whole, inconsistent with [claimant]'s statements[,] and inconsistent with itself, substantial evidence supports the ALJ's decision to give no weight to [psychologist]'s report[.]")

Accordingly, the ALJ provided valid reasons for rejecting the severe limitations outlined in Dr. Litzinger's opinion, and the ALJ's analysis constituted a rational interpretation of the evidence. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld."). The Court finds the ALJ did not err by only partially crediting Dr. Litzinger's opinion. Accordingly, reversal is not warranted.

  b. Analysis: LMFT Elizabeth Middleton

Elizabeth Middleton served as Plaintiff's therapist, and her treatment notes span several months in 2014. AR 21. The notes opine that Plaintiff is unable to do even basic activities of daily living such as opening his mail, answering calls, changing clothes, and cleaning his home. AR 21. Ms. Middleton also completed a one-page, "Mental Capacity Questionnaire" in September 2014. AR 234. She opined Plaintiff could not perform simple, repetitive tasks, and he does not have the capacity to work eight hours per day, 40 hours per week, 50 weeks per year. Id. Additionally, Ms. Middleton completed a third-party Adult Function report in April 14, 2015, indicating Plaintiff had significant difficulties with basic daily functioning due to his mental health issues. AR 23, 186-94.

Ms. Middleton also testified at the administrative hearing about

Plaintiff's limitations. AR 40-47. She explained Plaintiff is a high risk for suicide. AR 41. She said his depression and alcoholism go "hand-in-hand," and when he stops drinking his problems with forgetfulness, organization, and depression improve. AR 43, 45-46. She also described that she helps him by organizing his paperwork, preparing "trial binders," setting up online payments, calling the "disability number" when he forgets, and generally helping him with his claim. AR 42-44.

The ALJ set forth a detailed summary of Ms. Middleton's notes, questionnaire, and testimony. AR 21. The ALJ assigned "no weight" to Ms. Middleton's conclusion in the Mental Capacity Questionnaire that Plaintiff could not work a normal workday because: (1) it was inconsistent with benign mental status examination findings; (2) she relied heavily on Plaintiff's subjective claims; and (3) the opinion did not address the impact of Plaintiff's ongoing alcohol abuse and noncompliance with treatment on his ability to function and benefit from treatment. AR 21. The ALJ assigned some, but not significant, weight to Ms. Middleton's third-party questionnaire and testimony because: (1) they conflicted with the objective evidence and observations of doctors; (2) they conflicted with Plaintiff's daily activities; and (3) she became closely involved in Plaintiff's personal affairs. AR 23-24.

Plaintiff concedes Ms. Middleton, as an LMFT, is not an acceptable medical source. Jt. Stip. at 7. Nonetheless, he contends her opinions are consistent with the longitudinal treatment record, and the ALJ failed to articulate germane reasons in finding her opinions unpersuasive. Jt. Stip. at 7-8, 14-16.

The Court has already discussed the ALJ's reasoning regarding the lack of a discussion of the impact of Plaintiff's ongoing alcohol abuse and noncompliance with treatment on his ability to function and benefit from
//

11

treatment in addressing Dr. Litzinger's opinion above.[2] Having met the higher, specific-and-legitimate standard for contradicted opinions, the Court finds the ALJ's reasoning also meets the lesser, germane-reason standard for LMFTs. Molina, 674 F.3d at 1111; Villafan, 2018 WL 2734914 at *14 (ALJ provided germane reasons to reject LMFT's opinion because the reasons satisfied the specific and legitimate standard for rejecting doctor's opinion).

The Court has also already discussed the conflict between severe limitations and the objective mental status findings. Ms. Middleton's opinion conflicts with the findings discussed above, and others detailed by the ALJ. AR 21-22, 72, 74-77, 325-28, 347-48, 404-05. This is a germane reason for discounting Ms. Middleton's opinion. See Molina, 674 F.3d at 1111; Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957; Satrom, 2011 WL 2633876 at *4; Villafan, 2018 WL 2734914 at *14.

The remaining reasons outlined by the ALJ are also germane and supported by substantial evidence in the record.

First, the ALJ properly determined Ms. Middleton's opinion in the Mental Capacity Questionnaire relied heavily on Plaintiff's subjective complaints. AR 21. For example, in the section of the questionnaire requesting a description of the "objective and clinical findings" supporting the opinion, Ms. Middleton primarily summarized Plaintiff's social history, subjective complaints, and personal feelings of shame in being on disability. AR 234. As explained in the Court's analysis of Disputed Issue No. 2, below, the ALJ

---

[2] Ms. Middleton testified at the hearing that Plaintiff's depression improved when he was not drinking. AR 43, 46. But the ALJ was clear his reasoning applied only to Ms. Middleton's questionnaire. AR 21. Regardless, Ms. Middleton's terse testimony about Plaintiff's alcoholism was still devoid of details of his failure to follow treatment advice and how long Plaintiff would remain functionally impaired if he stopped using alcohol. AR 44-46.

properly discounted Plaintiff's subjective complaints. Accordingly, this is a germane reason supported by the record. See, e.g., Calkins v. Astrue, 384 F. App'x 613, 614 (9th Cir. 2010) (doctor appeared to rely to a significant extent on claimant's subjective reporting because it was unlikely opinion could be based on relatively superficial testing); Morgan, 169 F.3d at 602 (disability opinion "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted" (quotations omitted)); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (same).

Second, the ALJ properly reasoned that Plaintiff reported a history of performing activities of daily living and social interactions that are "greatly above" the level of functioning described by Ms. Middleton.[3] AR 23; see Doney v. Berryhill, 728 F. App'x 687, 690 (9th Cir. 2018) (inconsistency between claimant's daily activities and therapist's opinion is a germane reason for discounting opinion); Morgan, 169 F.3d at 600-02 (an inconsistency between opinion and a claimant's daily activities may be a specific and legitimate reason to discount the opinion). Indeed, during an examination, Plaintiff reported to Dr. Bong Doan that he is able to live by himself and take care of his mother, who lived nearby. AR 346; see also AR 54, 177. He reported a history of adequate self-care skills, including dressing, bathing, eating, toileting, and safety precautions. AR 346. He also shops, cooks, cleans, and can drive. Id. Further, he reported handing his own financing, and playing

---

[3] Plaintiff does not discuss this reason for discounting Ms. Middleton's opinion (Jt. Stip. at 5-8, 14-16), including after it was raised by the Commissioner (Jt. Stip. at 12-13). See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before the district court); Owens v. Colvin, 2014 WL 5602884, at *4 (C.D. Cal. Nov. 4, 2014) (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain reasons waived any challenge to those aspects of ALJ's finding).

13

the bills. Id. These activities are in stark contrast with Ms. Middleton's third-party questionnaire and testimony of severe limitations. AR 23-24, 40-47, 186-94. The ALJ properly relied on this factor.

Finally, the ALJ properly discounted Ms. Middleton's opinion because she became closely entrenched in Plaintiff's personal affairs. AR 23-34. The ALJ noted it appeared Ms. Middleton became so closely involved that Plaintiff became dependent upon her assistance and guidance. AR 23. The ALJ stated this raised a question whether she could objectively assess Plaintiff's functioning, and whether she was a disinterested third party. AR 24. The record supports the ALJ's finding. As mentioned, Ms. Middleton testified she helped Plaintiff by paying bills, preparing his "trial binders," and calling the "disability number" for him. AR 42-44. She also admitted that, even though it was "not her job," she would text him the night before, or the morning of, to remind him about hearings and appointments. AR 44-45. She further stated she would go through his bills and ask "what's this payment for?" and inquire whether he filed claims based on supplemental insurance payments. AR 45; see also AR 61. The ALJ properly took Ms. Middleton's entrenchment in Plaintiff's affairs into account when he assigned her opinion only "some" weight. AR 23-24; See Greger, 464 F.3d at 972-73 (fact that witness's "close relationship" with claimant "possibly" influenced her desire to help him was a germane reason to disregard testimony); Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (ALJ did not err in concluding that physician who helped claimant apply for benefits was not able to be objective).

The Court finds the ALJ did not err in assessing Ms. Middleton's opinion. Accordingly, reversal is not warranted.

**B.**   **Plaintiff's Subjective Symptom Testimony**

In Issue No. 2, Plaintiff argues the ALJ improperly discounted his subjective symptom testimony. Jt. Stip. at 16-19, 22-24.

1. Applicable Law

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 416.929. The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's credibility finding may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson, 359 F.3d at 1197.

2. Analysis

At the 2017 hearing, Plaintiff testified he last worked three years ago as a senior software engineer. AR 48-50. In that capacity, he developed software for a casualty insurance company. AR 48, 50. He was in charge of development and direction of design, mentoring and training upcoming developers, and helping with managerial responsibilities. AR 50-51, 55-57. His job was socially isolating; he worked in front of a computer in a cubicle and then later at home. AR 54. He has a Bachelor of Science degree in quantitative methods. AR 52. He stopped working due "a slow buildup of just falling apart[.]" AR 51, 60. He started off as a casual, social drinker, and gradually became an alcoholic. AR 52-53. He achieved sobriety on July 1, 2016. AR 53. Since sobriety, he is

regaining clarity. AR 54. He stopped taking his anxiety medication because he "didn't like it," and his psychiatrist relocated. AR 53, 59. He has a new psychiatrist, but he hasn't seen the doctor yet. AR 59. He sees Ms. Middleton once or twice a week. AR 59. She helps him cope through his problems. AR 61. She also helps him with things like making payments and other things that he "pretty much gave up on in life." AR 61. He lives alone. AR 54. He doesn't think he can go back to work because he has trouble just making it from one day to the next. AR 61. His thoughts are scattered. AR 61. He cannot do normal things he used to do. AR 61. He has trouble managing his life. AR 61.

Plaintiff completed a function report in which he described symptoms such as suicidal ideation, anxiety, difficulty completing tasks, diminished concentration and focus, and social isolation. AR 19, 177-78, 182-83. He required reminders to take medication and encouragement to clean up after himself and do chores. AR 179. He was unable to pay bills in a timely manner and spent most of his time at home sleeping. AR 177-78, 180-81, 183. For social activities, he spent time with his therapist, psychiatrist, and son "once in a while." AR 181. He took medication that had no side effects. AR 184.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were not "entirely consistent with the medical evidence and other evidence in the record" (AR 19-20) because Plaintiff's subjective symptom testimony was inconsistent with: (1) the objective evidence and other evidence in the record; (2) his lack of compliance with treatment recommendations; and (3) his daily activities. AR 20-24. As explained below, the ALJ provided legally sufficient reasons for discounting Plaintiff's subjective symptom testimony.

First, the ALJ discounted Plaintiff's symptom testimony because it was not entirely consistent with the objective medical evidence. AR 20. "Although

lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. As explained above in Disputed Issue No. 1, objective medical evidence, namely mental status examination findings by Dr. Litzinger and other doctors, conflict with Plaintiff's allegations of total disability. In light of this evidence, the ALJ properly considered the inconsistency as one of at least two valid factors supporting the decision to discount Plaintiff's symptom testimony. See Burch, 400 F.3d at 681.

Second, the ALJ discounted Plaintiff's symptom testimony because he failed to comply with treatment recommendations. AR 30. In assessing credibility, "the ALJ may consider . . . unexplained or inadequately explained failure . . . to follow a prescribed course of treatment." See Molina, 674 F.3d at 1112; see also Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (same); 20 C.F.R. §§ 404.1530, 416.930. As detailed above, Plaintiff was advised by Dr. Litzinger to strive for sobriety, and Plaintiff admitted to abandoning medication so he could drink. Indeed, Plaintiff admitted to many mental health professionals that he continued to drink while taking psychotropic medications, and was generally not compliant, including to Dr. Michael Tramell (AR 306-16, 335-36), Ms. Middleton (AR 243-243), and Dr. Doan (AR 72, 75, 344-48). See also AR 287. Accordingly, the ALJ properly relied on Plaintiff's failure to follow treatment recommendation. See Molina, 674 F.3d at 1112; Bunnell, 947 F.2d at 346; Edlin v. Colvin, 2014 WL 5500311, at *5 (E.D. Wash. Oct. 30, 2014) (ALJ properly relied on claimant's lack of compliance with treatment, in discounting credibility).

Plaintiff asserts that the ALJ did not use non-compliance with treatment as a rationale for discounting Plaintiff's complaints; rather, Plaintiff argues, the ALJ was merely summarizing the record. Jt. Stip. at 23 (citing AR 20).

17

However, the ALJ did in fact tie Plaintiff's failure to comply with treatment directives with the ALJ's conclusion regarding Plaintiff's complaints, stating "[Plaintiff's] continued use of alcohol and other illegal substance prior to his sobriety date suggest a possible unwillingness to do what is necessary to improve his condition and renders his current allegations of disabling psychiatric symptoms unpersuasive." AR at 22.

Third, although not entirely clear, the ALJ appears to have also relied on Plaintiff's daily activities in discounting Plaintiff's subjective complaints. AR 24. To the extent the ALJ did rely on this factor, Plaintiff contends the ALJ failed to make requisite findings of their application in the work setting necessary to support a credibility finding. Jt. Stip. at 18, 24. See Martinez v. Berryhill, 721 F. App'x 597, 600 (9th Cir. 2017) (ALJ improperly "discounted [claimant]'s testimony based on her daily activities . . . [without] support[ing] the conclusions as to the frequency of those activities or their transferability to the workplace."); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (ALJ must make "specific findings related to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination").

Here, without reaching the issue, even if the ALJ erred in failing to make the findings required for a credibility determination, as long as there remains "substantial evidence supporting the ALJ's conclusions" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal. Batson, 359 F.3d at 1195-97; Williams v. Comm'r of Soc. Sec. Admin., 2018 WL 1709505, at *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall credibility determination."). As there are at least two other bases for the ALJ's discounting of Plaintiff's subjective

symptom testimony, the Court does not consider the purported basis based upon inconsistency with activities of daily living.

The Court finds the ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, specifically, the conflict with objective medical evidence and Plaintiff's noncompliance with treatment. Those grounds, together, are sufficient to affirm the ALJ's decision on the issue.

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: November 06, 2018

_____
JOHN D. EARLY
United States Magistrate Judge